## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN F. GALLAGHER,**<br>**MELISSA M. GALLAGHER**, and<br>**ON BEHALF OF ALL OTHERS SIMILARLY**<br>**SITUATED**<br>      Plaintiffs,<br><br>      v.<br><br>**NORTHAMPTON COUNTY REVENUE**<br>**APPEALS BOARD, NORTHAMPTON**<br>**COUNTY TAX CLAIM BUREAU,**<br>**BETHLEHEM AREA SCHOOL DISTRICT,**<br>**BETHLEHEM TOWNSHIP, PORTNOFF**<br>**LAW ASSOCIATES, LTD**, and<br><br>**STACY GOBER** in her individual and<br>official capacity<br>**ANDREW J FREDA** in his individual and<br>official capacity, and<br>**STEVEN J BARRON, JR** in his individual and<br>official capacity | Case No. 23-cv-3275<br><br>**CIVIL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      Defendants.

### COMPLAINT FOR DECLARATORY, COMPENSATORY AND INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

This Complaint for Declaratory Judgment, Compensatory, and Injunctive Relief is brought by John F. Gallagher and Melissa M. Gallagher, and on behalf of all others similarly situated (collectively, "Plaintiffs") against Northampton County Revenue Appeals Board, Northampton County Tax Claim Bureau (NORCO), Bethlehem Area School District (BASD), Bethlehem Township, Portnoff Law Associates, Ltd., Stephen J Barron, Jr., Andrew J. Freda and Stacey Gober (collectively, "Defendants") in order to redress grievances against the sacred property rights of citizens of Pennsylvania and residents of Northampton County that were wrongfully removed from

them. Defendants, under color of the property tax statutes discussed herein, exert a level of power, dominion, and control-in-fact over all property in Northampton County that it does not legally or rightfully possess and which the Commonwealth itself did not possess at the time of statehood, and in an unlawful manner that has reduced the ownership rights of Pennsylvanians (i) to a level far below that which was granted them under the state constitution, statutes and case law, still in effect, since the origination of Commonwealth of Pennsylvania and (ii) to a level below that which is afforded by the United States Constitution.

In order to assist the court in applying the principles set forth in <u>Tyler v. Hennepin County</u>, the Supreme Court of the United States, No. 22–166 (Decided May 25, 2023) for determining the level and nature of the substantive property rights under Pennsylvania law and their applicability to federal claims, the claims in this action start with state law claims and facts that set forth the necessary background and original laws and constitution of Pennsylvania that created and maintained a very high level of substantive property rights and protections at the time of the founding of the Commonwealth when <u>absolute title to all land</u> in the Commonwealth was by law and contract (i) vested in the Commonwealth, (ii) held in trust for the benefit of all Pennsylvanians, and (iii) granted to all Pennsylvanians pursuant to ownership under the first land office law. Any subsequent law or action that divests such rights is unconstitutional, illegal or invalid.

Plaintiffs aver as follows:

## <u>JURISDICTION AND VENUE</u>

1.      Plaintiffs bring this action pursuant to 42 U.S.C. §§1983 and 1985 for violations of civil rights by Defendants under the United States Constitution.

2.       The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

3.      In order for Plaintiffs to obtain complete relief for this case, supplemental jurisdiction

is requested pursuant to 28 U.S.C § 1367 with regard to related state claims which arise from the same set of operative facts which form the basis of the underlying federal claims for deprivation of Constitutional rights.

4.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

5.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because some Defendants reside in this District and all Defendants reside in the state, and all the events giving rise to this claim occurred in this District.

## **PARTIES**

6.    The Plaintiffs are, John F. Gallagher and Melissa M. Gallagher who own the land and property for private use where they live at 4050 Freemansburg Avenue, Easton, County of Northampton, Pennsylvania, Bethlehem Township (the "Property"), telephone # 484 903-3286 and on behalf of all those similarly situated.

7.    The Defendants, representing all parties in interest, are:

Northampton County Revenue Appeals Board
Northampton County Government Center
669 Washington St
Easton, PA 18042

Northampton County Tax Claim Bureau (NORCO),
Second Floor
Stephen J. Barron, Jr., Director Revenue
669 Washington St
Easton, PA 18042

Bethlehem Township
Andrew J. Freda, Tax Collector
4225 Easton Avenue
Bethlehem, PA 18020

Bethlehem Area School District (BASD)
Stacy Gober, Director of Business Affairs
1516 Sycamore Street
Bethlehem, PA 18017

Portnoff Law Associates, Ltd.
2700 Horizon Drive, Suite 100
King of Prussia, PA 19406
Defendants Stephen J. Barron, Jr., Andrew J. Freda, and Stacy Gober are responsible for
tax collection and revenue in their respective agencies.

## FACTS RELIED UPON TO JUSTIFY
## DECLARATORY RELIEF

8.      The purpose of declaratory relief is to settle and afford relief from uncertainty and
insecurity regarding rights, status and other legal relations in order to prevent a harm from occurring
that could be avoided if such rights, status and other legal relations are properly clarified.

9.      In order for Plaintiffs to properly assert their complete lawful property rights under
state and federal law against Defendants' actions, they risk losing their property pursuant to a
proceeding under the property tax statutes discussed herein, or any other such similar applicable
statutes (referred to collectively as the "Statutes").

10.      Defendants BASD and Bethlehem Township, by and through their contracted service
provider, Portnoff Law Associates, Ltd. (Portnoff), have initiated a series of communications and
demands against  Plaintiffs  to collect 2022 "real estate taxes" and "stormwater fees" (collectively
"tax bills") in the amount of  $3821.82 for school taxes, dated March 23, 2023; $564.79 for township
property taxes, dated April 7 and 10, 2023; and $223.92 for stormwater fees, dated March 10, 2023.
These amounts include penalties and late fees to date.

11.      Defendant NORCO has twice placed a red flag or paper on the Property threatening to
sell it at a Sheriff's sale for a tax bill of less than $900.00.

12.      Defendant NORCO continues to threaten Plaintiffs that they can sell the property for
any amount with no duty to Plaintiffs to protect their vested ownership or equity rights, or any

guarantee that Plaintiffs would see any moneys from such a sale, an obviously egregious action that violates the 5th/14th Amendment and the 8th/14th Amendment to the United States Constitution. <u>Tyler v. Hennepin County</u>, Minnesota, Et. Al., Slip opinion, the Supreme Court of the United States No. 22–166. (Decided May 25, 2023).

13.     The Defendants threaten (i) to take the Plaintiffs entire Property for tax bills which represent a very small amount percentage-wise of the fair market value of the Property, (ii) to forfeit vested equity rights, or (iii) to vest title in another owner in a potentially illegal or unconstitutional manner, thus creating a plausible basis for relief under 42 USC 1983 and/or 1985.

14.     Through said communications, Portnoff has threatened/initiated a legal dispute or action against the Property and the Plaintiffs in the form of demands for payments and a tax lien pursuant to the Statutes discussed below.

15.     Plaintiffs are in peril of losing their Property and incurring more taxes and fees by getting deeper into unnecessary legal conflicts and proceedings with Defendants while Plaintiffs attempt to inform Defendants' (and their representative) of their lawful property rights and lawfully execute said rights against Defendants' claims of tax liens and their property rights assertions against the Property.

16.     Therefore, have an interest which is direct, substantial and present, and there is an actual controversy regarding the Defendants' claims.

17.     A Declaratory Judgment would prevent a direct, substantial and present harm as described herein from occurring by clarifying the legal rights and relationships between Plaintiffs and Defendants and the application of the Statutes under which Defendants seek to alien and take the entire Property to pay their bills and then redistribute it to someone else without consent of the absolute and rightful owner and without just compensation.

## CLASS ACTION
### Fed. R. Civ. P. 23(b)(2)

18.    A class action under Fed. R. Civ. P. 23(b)(2) is appropriate for the federal and state claims herein because they are requests for declaratory judgments with respect to compensation, damages or injective relief that would apply generally to all similarly situated persons whose residential homes or dwellings are in the process of collections or being aliened and foreclosed upon pursuant to the Statutes.

19.    Specifically, membership in the class belongs to individuals whose property has been returned to the Tax Claim Bureau of Northampton County or to Portnoff for non-payment of taxes under the Real Estate Tax Sale Law of 1947, or who have had a collection process begun by Defendant Portnoff under the Municipal Claim and Tax Lien Law (Act of May 16, 1923, P.L. 207, No. 153) based on purported "assessments" under the applicable General County Assessment law (the Statutes).

20.    The aforesaid individuals, including Plaintiffs John F. Gallagher and Melissa M. Gallagher, whose residential homes or dwellings are in the process of collections or being aliened pursuant to the aforesaid Statutes, or any similar statute, are members of a class who are similarly situated because their interests are either identical or so substantially similar that a declaratory judgment for one member of the class would generally, as a matter of law, be applicable to all other members.

21.    The potential members of the class are easily ascertainable from the business records of the Defendants and are administratively feasible to determine.

22.    In the absence of a certified class, the Defendants could be subject to an onslaught of inverse condemnation law suits, which could be avoided if a declaratory judgment were to apply to the whole class.

6

23.    The calculation of just compensation for all members of the class with regard to Count VI, Inverse Condemnation Declaratory Judgment Action, would consist of a formula that is either identical or substantially identical for all members of the class, being a straightforward and simple calculation of the fair market value of the property less reasonable taxes owed (with no excessive fines or fees added).

24.    The amount of taxes owed is already known by Defendants and easily determined.

25.    A fair market value satisfactory to the parties to determine the amount of just compensation should not be a deterrent to certification of a class because there are companies and websites which, if acceptable to all parties, can quickly and for little cost calculate reasonable fair market values of homes with the input of readily available or easily obtainable information.

26.    To the extent a property has any liens other than property tax liens under the Statutes, this would not affect the administration of a judgment amount because any said liens can, according to the judgment, be ordered to be paid by the property owner out of the proceeds of the judgment amount; therefore, a substantial and valuable business purpose is also accomplished.

27.    The claims of some members of the class may seem more "ripe" than others because they are farther into the tax claim and lien process, however, all members of the class proposed herein are in the same boat regardless of how close they are to actual foreclosure and thus are entitled to a declaratory judgment so they can exercise an opportunity to pay the tax or allow the municipality or Portnoff to pay just compensation for the property.

28.    Government in the United States of America was instituted to protect Americans, not take advantage of Americans, and the class described herein is distinctly in need of the immediate protection requested herein.

29.    With respect to Counts other than I and VI, Plaintiffs request an injunctive remedy, or

any such other applicable remedy as determined by this court for either the lead Plaintiffs or the entire class.

## BACKGROUND FACTS AND ALLEGATIONS
### Petitioners' Declaration of Absolute Ownership and Deed of Title to the Property

30.    Plaintiffs John F. Gallagher and Melissa M. Gallagher have declared an absolute ownership estate (subject to an easement reservation and lawful eminent domain) in "the Property".

31.    Petitioners own the Property free and clear of any mortgage(s) and, to the best of Plaintiffs knowledge, there are no recorded liens against the Property.

32.    The Defendants are the local/district taxing or municipal authorities and their private "collection agency" (only with respect to BASD and Bethlehem Township), imbued with apparent legal authority under statutes of the Commonwealth of Pennsylvania to assess and collect "delinquent taxes" and fees commonly known and referred to as "real estate taxes" (and now "stormwater fees"), and then take and sell private homes to collect on said debts within their respective jurisdictions and within the County of Northampton, the county in which the Property is located.

33.    In accordance with the enclosed Deed, Record Book 2002-1 at page 365500 executed on December 16, 2002, the legal description of 4050 Freemansburg Avenue, Bethlehem Township, Easton, Northampton County, Pennsylvania is as follows:

> **ALL THAT CERTAIN LOT,** messuage and tenement located in the Township of Bethlehem, County of Northampton and Commonwealth of Pennsylvania and designated as Lot #1 on the Plan of DeMartino/Gallagher/Lele recorded in Plan Book Volume 2002-5 at page 50, more particularly described as follows, to wit:
>
> **TRACT NO. 1:**
>
> **BEGINNING** at a point at the intersection of the southerly right-of-way line of Freemansburg Avenue (40' from center) and the easterly right-of-way line of Fleck's Lane (32' wide) thence along said southerly right-of-way line of Freemansburg Avenue

N. 63° 09' 03" E., 127.66' to a point thence along Lot #2 S. 27° 48' 00" E., 196.58' to a point; thence along Lot #3. 62° 19' 40" W., 130.90' to a point; thence along said easterly right-of-way line of Fleck's Lane 26° 51' 30" W., 198.43' to a point, the place of beginning.

**TRACT 1A:**

**BEGINNING** at a point at the intersection of Freemansburg Avenue (SR 2018) and the easterly right of way of Fleck's Lane, thence along the right of way of Freemansburg Avenue N. 62° 08' 08" E a distance of 127.16 feet to a point thence south 27° 48' 00" E a distance of 31.68' to a point 196.58' to a point; thence west 63° 09' 03" south 127.66 feet to a point thence North 26° 51' 30" West to a point of beginning a distance of 29.42 feet. Being the cross hatched portion of Lot #1 as shown on the aforesaid Plan. Lot 1A as described herein is conveyed under and subject to any interested granted to the Township of Bethlehem by virtue of the execution, recording and dedication of such portion of Lot 1A as may be shown on the aforesaid Plan.

34.    The Description of the larger tract of patented land from the Land Patent of which the Property is a part, is Recorded in Book A, Volume 12, Page 154-156, October 5, 1744, as follows:

> [T]he bounds and limits of the said tract of land are described as follows: beginning at a marked black oak standing by the said West Branch of Delaware River at a corner of Hugh Wilson's Land and from thence extending by the same and Vacant Land North three hundred and ten perches to a post, thence by a line of marked trees east three hundred and ninety-six perches to a stone in a line of William Wilson's Land. Thence by the same South one hundred and thirty-four perches to a marked Hickory by the Branch aforesaid. Thence up to the same on the several courses thereof to the Place of Beginning containing five hundred and seventy-five acres and the allowance of six acres per cent for roads and highways; and the said three islands being bounded on all sides by the stream of the said river, the uppermost one contains twenty-one acres and allowance as aforesaid, the next twelve acres with the allowance aforesaid and the lowermost eighty-five acres and allowance as aforesaid.

35.    Petitioners own the Property free and clear of any mortgage(s) and there are no recorded liens against the Property of which Plaintiffs are aware.

36.    The Defendants, under color of statutes of the Commonwealth of Pennsylvania, use various procedures and create various documents to sell properties in order to collect monies and enforce tax liens within their respective jurisdictions and within the County of Northampton, the county in which the Property is located.

37.    Defendants Bethlehem Township and BASD use Portnoff Law Associates, Ltd.

"Portnoff") as an agent to enforce tax claims and liens against the Property in order to collect monies on behalf of Defendants Bethlehem Township and BASD.

38.    On June 16, 2023 Plaintiffs sent via certified mail/return receipt, a NOTICE AND UNSWORN DECLARATION OF ACCEPTANCE OF ALLODIAL TITLE BY THE UNDERSIGNED (the "Declaration") to Portnoff at their business address as representative of Defendants BASD and Bethlehem Township.

39.    The Declaration referenced herein contains (i) an unsworn Affidavit of Acceptance of Assignment of Land Patent, (ii) a chain of title summary, and (iii) a chain of title of *certified* deeds, including a copy of the *certified* Land Patent, Book A, Vol. 12, 154-156 ("Land Patent") detailing the conveyances of the Property from the most recent Deed of Title to the Plaintiffs (cleared of all mortgages) directly back to the grant of the aforesaid Land Patent of which the Property is a part.

40.    After receiving additional demand letters in the U.S Mail for taxes and fees from Portnoff on July 7 (seven letters dated July 5), Petitioners, on July 10, 2023, sent Defendant Portnoff via U.S. Mail a cease and desist letter demanding them to stop all collections activities, stop incurring more fees and penalties, and to stop colluding with certain Defendants to violate the civil and constitutional rights of Plaintiffs with its process of taking Petitioners' land for "delinquent taxes"; Plaintiffs have gotten no response from Portnoff or any person from Portnoff.

41.    On June 20, 2023 Plaintiffs hand delivered the Declaration to Defendant Northampton County at the Department of Fiscal Affairs Revenue, 669 Washington St, Easton, Pennsylvania.

42.    The Declaration serves as actual notice to interested parties of perfection of title; constructive notice (a modified/truncated form of the Declaration) has been published to the general public pursuant to Court Rule N440(c), which applies where the manner of notice is not prescribe by statute or rule of court, as follows:

    a.    Petitioners published public notice via the Northampton County Legal Reporter to be run June 29, 2023.

    b.    Petitioners published public notice in the Express-Times June 22, 2023.

    c.    The content of the public notice is as follows:

PUBLIC NOTICE

This public notice is to advertise to the public the filing of my NOTICE AND UNSWORN DECLARATION AFFADAVIT OF ACCEPTANCE OF ALLODIAL TITLE BY THE UNDERSIGNED, filed by John F. Gallagher and Melissa M. Gallagher, and offer to any party with lawful standing who wishes to review the complete file on record to request an appointment with:

John F. Gallagher
484.903.3286
4050 Freemansburg Avenue
Easton, Pennsylvania

Any party with standing to bring forward a lawful challenge to the aforesaid NOTICE AND UNSWORN DECLARATION shall properly and lawfully bring forth such claim of interest.  Failure to make such a lawful claim of interest within sixty (60) calendar days from the date of this NOTICE shall result the barring of all challenges by any party or parties in law or equity forever, and such shall be considered as a final judgment in the proper court of law or equity, as appropriate.

43.   The Declaration is also an attempt to "quiet title" so to speak without using the judiciary system, and is a procedure for perfecting title within a reasonable time period (60 days) during which parties in interest can challenge the claim of perfection, after which time, title would be forever perfected, and a failure to timely and successfully challenge the claim of perfection results in the barring of any further claims against the Property in perpetuity by anyone.

44.   The delivery of the Declaration referred to herein was accompanied by a letter reiterating the instructions set forth in the Declaration to assert an interest which is superior to Petitioners' declared interest within the 60 day time period set forth in the Declaration, or suffer the consequences described therein.

45.   As of the date of the filing of this Complaint, Defendants have ignored the

Declaration, Plaintiffs have not received any response regarding the Declaration and they continue with their unlawful process of taking the Property; therefore, Plaintiffs instituted this complaint in order to resolve the controversy and avoid incurring additional fees, costs and harms.

46.    The procedure for perfecting title in accordance with the Declaration consists of the following necessary actions and declarations of a property owner prior to any recording at the Recorder of Deeds:

       a.    <u>Proof of Chain of Title</u>. *Prima facie case*. In general, a property owner must make a prima facie case by showing a direct chain of title from their deed of title back to either (i) the original grant of the patent or (ii) to an heir or assignee who has redeclared (brought forward) the original patent with a citation to the patent books now held in Harrisburg. All deeds of title in the chain of conveyances and the patent must generally be obtained (if possible) by the property owner and certified by the proper authority. This acts as a strong but rebuttable presumption which parties in interest must rebut within 60 days of receiving notice.

       b.    <u>Notice and Declaration of Acceptance of Assignment.</u> A property owner must (i) declare and accept the assignment of the land patent, (ii) provide the description of the property in the patent and (iii) provide a proper description of the property (metes and bounds) with a declaration that their patent rights apply only to the parcel of property that is a part of a larger tract of patented land.

       c.    <u>Sworn or unsworn Penalty of Perjury Statement</u>. The property owners must attest to the notice and declaration under an unsworn penalty of perjury statement or have the documents notarized.

       d.    <u>Some form of Public notice</u> must be given in accordance with Court Rule N440.

47.    The procedure set forth in the foregoing paragraph is a process referred to as "bringing forward" or "redeclaring" a land patent, which at law and by contract runs with the land when the property owner accepts the assignment.

48.    The purpose of perfecting title and bringing forward the patent is to create the highest estate or title one can possess in their land in the United States--the fee simple absolute aka an "allodial" estate.

49.    Petitioners perfected their chain of title by completing the procedural steps described

herein, and are preparing the Declaration and supporting documents to be recorded at the Office of the Recorder of Deeds so that the Declaration becomes a matter of public record.

50.    Prior to Pennsylvania becoming a state of the union all the land was held by the Penn family (the Proprietaries) under feudal tenures after William Penn received a grant of the land that was to become the State of Pennsylvania from King Charles II in 1681.

51.    The Commonwealth of Pennsylvania through acts of the early General Assembly did three basic things on and after the founding of America on July 4, 1776 with respect to the lands under its authority: (i) In 1779 it statutorily vested itself with absolute title in the lands held by the Proprietaries (the Penn family) and held the land in trust for the benefit of Pennsylvanians, (ii)  in 1781 it statutorily recognized and "cleansed" the prior land patents to private individuals originating from the Proprietaries as becoming allodial in nature after the revolution and (iii) also in 1781 it passed another law creating a land office and issued land patents from the Commonwealth in the nature of allodial title to private individuals; the Property herein is an example of (ii), a prior land patent grant.

52.    This has been set forth by the Supreme Court of Pennsylvania, in a precedential case, which declared the validity and clarified the quality of Pennsylvania's land patents as granted to and held by private property owners in the Commonwealth:

> Under the Acts of [the Pennsylvania] Assembly I have alluded to, the state became the proprietor of all lands [after the Revolutionary War], but instead of giving them like a feudal lord to an enslaved tenantry, she has sold them for the best price she could get, ***and conferred on the purchaser the same absolute estate she held herself*** [emphasis added], except the fifth of gold and silver, and six acres in the hundred for roads, and these have been reserved, as everything else has been granted, by *contract* [emphasis in original].  Wallace v. Harmstad, 44 Pa. 492, 501 (Pa. 1863).

53.    The Court further declared:

> Her [Pennsylvania's] patents all acknowledge a pecuniary consideration, and they

13

stipulate for no fealty, no escheat, rent-service, or other feudal incident. I conclude, therefore, that the state is lord paramount as to no man's land. When any of it is wanted for public purposes, the state, in virtue of her political sovereignty, takes it, but she compels herself, or those who claim under her, to make full compensation to the owner. Id.

These quotes are the Court's description of allodial title, with the Court deciding that all Pennsylvania's titles are allodial as opposed to feudal.

54.    Wallace is applicable to the property tax scheme under the Statutes because it operates as, or substantially similar to, a ground rent or other feudal incident (except using modern terminology)--where the superior owner (the local district or municipality) pursuant to the scheme charges annual rent (called a "tax") to a property owner (a tenant or caretaker) and can dispossess him from his land for nonpayment, despite there being no provision in a deed to provide for it.

55.    Consistent with Wallace, the Land Patent under which my Property was originally granted from the Proprietaries in 1744 generally grants the land under "free and common socage" with a quit-rent in lieu of service that was abolished by the Acts of the Pennsylvania General Assembly after the American Revolution, thus making the title allodial in nature and removing feudal rubbish.

56.    Property taxes as administered under the Statutes are the reintroduction of feudal rubbish hidden in plain sight, and the tax scheme operates as a defeasance of our promised absolute title, which is derogatory to the fundamental rights of property.

57.    Since the time of Wallace it appears that the title of many Pennsylvanians to their property has been reduced, in one way or another, to something less than the promised absolute estate granted by allodial title in letters patent, and may require a process of perfecting title in order to reconnect and repair it, and thus assert (or reassert) absolute ownership against other claims, reversions or tax liens.

58.     For example, Plaintiffs Deed of Title to the Property executed on December 16, 2002 (enclosed in the Declaration) conveys by way of special warranty the estate or interest of the grantor but does not expressly use the words "fee simple absolute" or "absolute estate", and therefore might be an estate that could be considered less than an absolute estate that is in need of perfection.

59.     Plaintiffs also content, however, that perfection of title would not be necessary if our original constitutional and statutory property rights were acknowledged and respected, and that every Pennsylvanian does and continues to own their property absolutely as alleged herein and should assert said rights.

60.     Nonetheless, the general tenets of the law of property (blackletter law) are consistent across the United States, and there are many cases that illustrate the various levels of title (level of the interest or "estate") an owner possesses, the type of deed that transfers the interest, and methods of perfection.

61.     A grantor in a property deed generally conveys to the grantee the interest or estate (level of title) that he himself possesses (without regard to any warrantees), and where he possesses and transfers a valid title that may not be the highest estate possible at law or in equity, that title can be later perfected or "increased" with letters patent to the benefit of a subsequent grantee . Frink v Darst, 14 Ill. 304 (1853) (*citing* Jackson v. Fish, 10 Johns. 456 (1813)).

62.     In a nod to more modern terminology, the United State Seventh Circuit Court of Appeals used the term "fee simple absolute" instead of "allodial title" in order to describe the highest estate possible in property, the court said "[i]t is the most extensive interest which one may possess in landed property, an absolute estate in perpetuity". United States v Sunset Cemetery Co., 132 F.2d 163 (7th Circuit, 1942) (citing Frink v Darst, 14 Ill. 304 (1853)). [the term "fee simple absolute" in this context is interchangeable with "allodial title"]

15

63.     In a taking, the United States government asserts the highest of legal and equitable title which is ***passed to the government from or through previous private owner(s)*** (i.e. the right of the federal government to own land absolutely does not spring into existence from the abyss), and this title can be perfected as necessary in the deed of title to the government via its declarations in the taking documents. *See* <u>Id.</u>132 F.2d 163 (1942) (The property at issue was owned by and taken from Curtiss-Wright Corporation in "fee simple absolute" subject only to "'outstanding easements for highway purposes' and 'free from any claims of persons or person or corporation or body politic whomsoever'.")

64.     As described in <u>Sunset Cemetery</u>, the federal government perfected its deed of title in itsComplaintfor condemnation by making a declaration that the property be forever "free from any claims of persons or person or corporation or body politic whomsoever" in order to avoid the assertion of lesser interests such as local tax liens, but it had to take the land subject to highway easements (the recorded prior interest that the prior owner was subject to), and pay the cemetery for the taking of their easement.

65.     Thus, it is clear that all property owners, not just the government, are able to perfect their ownership interests in land estates by making declarations of absolute ownership.

66.     A method of perfecting title is to declare allodial title by showing a property's chain of title connecting it to its original land patent, and a declaration of acceptance that the property owner is an assignee of the original patentee. *See* <u>Jackson v. Fish,</u> 10 Johns. 456 (1813) (". . . [W]hen that claim [title] was afterwards perfected by the issuing of a patent, it was for the benefit of him to whom the claim had been transferred [the grantee or assignee of the property]."

67.     Thus, a private land owner in the United States of America, a grantee, who is the proper assignee at law and by contract of the original patentee who received his property in a

government grant, may increase his estate to that which is the highest in the United States of America, an allodial title or a fee simple absolute (generally subject only to prior recorded interests and eminent domain), by perfecting his title to his property.

68.    As set forth in the attached Declaration and consistent with the law, the land on which the Property is located was lawfully conveyed from the Proprietaries (the original proprietary government in colonial Pennsylvania, the Penn family) pursuant to a lawful Land Patent granted to Robert Grigg as Patentee and his *heirs and assigns forever*, which essentially is a grant that the Supreme Court in <u>Wallace</u> would consider as conveying allodial title to Plaintiffs, and the Circuit Court in <u>Sunset Cemetery</u> would consider as conveying a fee simple absolute, the highest ownership title possible in the United States of America, not subject to liens or any attachments by anyone or any body politic.

69.    The Land Patent on the Property was subsequently "brought forward" by Michael Smith in 1806 in his Deed of Title when he conveyed his interest to his sons, and thereby referred to all deeds and conveyances of the Property back to and including the Land Patent.

70.    Petitioners are direct Assignees at law and by contract of Robert Grigg and Michael Smith after him, and via perfection of their Deed of Title in the Declaration, have "brought forward" the Land Patent in their names and favor.

71.    Therefore, Petitioners, by virtue of their Deed of Title to the Property and the laws of the Commonwealth of Pennsylvania providing for absolute ownership, are entitled to the full rights and appurtenances guaranteed by law on which the Property is located, and are absolute owners of the Property.

72.    The Defendants do not have any record ownership interest or any other interest of any kind in the Property that is recorded at the Recorder of Deeds, except what appears to be a

reservation for an easement or similar interest along the road in favor of Bethlehem Township and/or the Bethlehem Township Municipal Authority.

73.     It is important to note that this action is <u>not</u> about avoiding taxes or not wanting to pay taxes, rather it is about securing and protecting the original and still standing property rights granted to Pennsylvanians in the Pennsylvania Constitution that (i) were recognized and protected by the General Assembly in its earliest actions as a legislative body and when it drafted the Statutes discussed below, and (ii) are also protected by the minimum standards of substantive and procedural due process under the 4th, 5th and 14th amendments to the U.S. Constitution, as well other provisions of the U.S. Constitution.

74.     The modern law of state or local ad valorem property taxes is complex and misleading because the Commonwealth and/or its political subdivisions/municipalities disavow ownership interests when instituting in rem actions against private land, but then are imbued with an absolute and oppressive statutory authority to divest all legal ownership and possession rights of record owners for failure to pay "tax debts" and vest those very same rights to themselves or someone else--an act that logic and the law dictate *is* the assertion of an equitable ownership interest/claim *to* property that is in reality a forfeiture in the nature of a ground rent for failure to pay, but for some reason is not observed as such.

75.     No averment in this complaint shall be construed as an admission of personal liability on the part of Plaintiffs for "delinquent taxes", nor as a confession of judgment by Plaintiffs of personal liability for any amount "assessed" as property taxes.

76.     This complaint shall not be construed as averring that the requirement to pay property taxes in the form of money is a taking under the Takings Clause; but rather that the effect and purpose of the scheme of taking property under the property tax laws and procedures violates the

Takings Clause and other laws and constitutional rights, both state and federal.

**Count I**
**State Claim**
**Appeal as of Right from the Adverse Decision of the**
**Northampton County Revenue Appeals Board**
**The Property, held absolutely, should be exempt from Taxation Under The**
**General County Assessment Law, The Real Estate Tax Sale Law and the**
**Municipal Claim and Tax Lien Law (collectively "the Statutes")**

77.     Paragraphs 1-76 are restated and incorporated by reference.

78.     Plaintiffs applied to the Defendant Northampton County Revenue Appeals Board (the "Board") on July 4, 2023 for an exemption from property tax assessments pursuant to Section 8812(b)(2) of The General County Assessment Law exempting property held absolutely from taxation. 53 P.S. Section 8812.

79.     Petitioner's exemption request was orally denied at a hearing held by the Board on August 15, 2023 on the grounds that the exception was not applicable to Plaintiffs or the Property, and there was no change made to the current assessment on the Property.

80.     At the hearing, the Board admitted they did not know the reason for the existence of the exemption and were not aware of any person or entity that has "used" the exemption successfully.

81.     The Plaintiffs are entitled to exemption under Section 8812(b)(2), or exemption generally, because Section 8812(b)(2) on its face and as applied by the Board violates Article VIII of the Constitution of Pennsylvania Sections 1, 2 and 5, and because rules of statutory construction require this result.

82.     To the extent Plaintiffs are found to be not entitled to exemption under Section 8812(b)(2) from assessments, the Property should be held to be incapable of being aliened by tax claims or tax liens under the Statutes or other similar statutes providing for similar in rem actions

against property in the Commonwealth.

83.    In a broad and far reaching assertion of apparent sovereign power, the Commonwealth of Pennsylvania declared nearly all privately held real property in the Commonwealth to be classified as "real estate" subject to assessment  by municipalities for ad valorem property taxes under The General County Assessment Law Title 53, and claims for tax liens under the Real Estate Tax Sale Law, Act of Jul. 7, 1947, P.L. 1368, No. 542 and Municipal Claim and Tax Lien Law (Act of May 16, 1923, P.L. 207, No. 153).

84.    Section 8812(a) of The General County Assessment Law contains an exhaustive list of "real estate" to be valued and assessed and subject to taxation for the benefit of Defendants, and section 8812(b)(2) lists the exemptions from taxation by law pursuant to the Constitution of Pennsylvania.

85.    Section 8812(b)(2) of The General County Assessment Law states:

> Except as otherwise provided in subsection (a)(12), all property, real and personal, actually and regularly used and occupied for the purposes specified in this section shall be subject to taxation unless the person or persons, associations or corporation so using and occupying the property *shall be seized of the legal or equitable title in the realty and possessor of the personal property <u>absolutely</u>* [emphasis added]. 53 P.S. Section 8812.

86.    Section 8812(b)(2) creates a special class (with no explanation whatsoever as to how one can obtain such status) of tax exempt owner (one with absolute title to his property), that is not specifically provided for as a basis of exemption from taxation in the Pennsylvania Constitution and is therefore an impermissible use of the legislative power to create an exemption for which the General Assembly has not been given authority.

87.    Section 8812(b)(2) uses the term "absolutely" in reference to ownership, which is the same word the General Assembly used in its Act of 1779 and Act of April 9, 1781, when it, respectively vested itself with absolute title and transferred absolute title of all land to the people of

the Commonwealth of Pennsylvania, and Plaintiffs do not believe this to be mere coincidence or without major significance.

88.     The provisions of the Statutes and the Pennsylvania Constitution apply generally to assessments *on properties* and do not provide exceptions for certain owners based on levels of title to property.

89.     The authority for the General Assembly to create exemptions provided by the Pennsylvania Constitution generally apply to property types or uses with very limited Constitutional provisions that may apply to some owners who are considered elderly or disabled, but there is no authority whatsoever for the  General Assembly to create a limited exception for owners based on levels of title, such as absolute title or some other secretive category or special level of title, especially where citizens have no legal ability to take advantage of such provision.

90.     There is no basis in the Pennsylvania Constitution for the General  Assembly to create a specialized or limited exemption from taxation based on absolute ownership, and therefore Section 8812(b)(2) violates Article VIII sections 2 and 5.

91.      Such provision also violates the uniformity clause of Article VIII section 1 because the basis for the classification is not uniform and is foreclosed to the general public by operation of the Statutes, and by virtue of the municipalities' and the Commonwealth's failure to recognize the validity of the original laws of the Commonwealth that established absolute ownership for all Pennsylvanians, and this is exemplified by them ignoring my Declaration, and their belief that it has no legal significance.

92.     <u>Statutory Construction</u>. Surplusage Canon. If possible, every word and every provision is to be given effect. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.

93.    Importantly, and in a somewhat convoluted manner, section 8812(b)(2) is the recognition by the General Assembly that absolute title to real and personal property exists and where it exists will not be subject to taxation--in effect it created an exemption not for a type of property use but rather for a special type of owner that appears to have been granted special privileges under the very laws that removed original property rights from all Pennsylvanians.

94.    Regardless of the uses specified in section 8812, this exemption applies to certain owners with respect to uses which are already exempted; therefore, to not apply the provision as a universal exemption from taxation would render the provision redundant and unnecessary, or to have no valid or legal consequence, which explains why the Board did not know the purpose of the provision or anyone who has used it.

95.    Section 8812(b)(2), a little known provision, although presented in relation to the uses in section 8812, is a blanket recognition that absolute ownership is an exemption in and of itself, and must be construed as such, and therefore must be applied as a universal exemption.

96.    Plaintiffs are by law and contract "seized of the legal or equitable title in the realty [the Property] . . .  absolutely"; and therefore are entitled to exemption under Section 8812(b)(2) or the other provisions of Statutes because the Property is not subject to tax liens in rem.

97.    Section 303(a) of the Real Estate Tax Sale Law states:

Property Subject to or Exempt from Claim.--(a) All property, by whomsoever owned and for whatsoever purpose used, and all property the owner of which is unknown and has been unknown for a period of not less than five years, shall be subject to claims for taxes, *except such property which is exempt by law from taxation or which is not made subject to taxation by law* [emphasis added].

98.    Section 303(a) of the Real Estate Tax Sale Law provides for two exceptions: (1) property which is exempt by law from taxation or (2) property which is not made subject to taxation by law.

22

99.    The Property satisfies the first exception via operation of its exemption from the General County Assessment Law, 53 P.S. Section 8812.

100.    The second exception in the Real Estate Tax Sale Law, "property which is not made subject to taxation by law", exempts lands held in absolute title by the owner(s) and therefore cannot later be made subject to taxation (or other sovereign interest) by law without a grant or reservation in the original land patent (or other origination document) or a subsequent deed, and such not being the case at the time these laws were passed, the exception was necessary.

101.    The Property also satisfies the second stated exception in the Real Estate Tax Sale Law by virtue of being held absolutely.

102.    Section 6 of the Municipal Claim and Tax Lien Law provides an exemption for property held by more than one owner if one owner is not subject to taxation by law, and therefore the Property is exempt from the application of all three statutes with respect to tax claims and liens.

103.    The property tax scheme in Pennsylvania, via the Statutes, is an assertion of an interest or claim (typically only a percentage of a property value) against the entire estate of a property owner in order to satisfy the claim; therefore, as a matter of blackletter property law, a portion of the owner's estate (or bundle of rights) in his property must be available for the taking when a condition is not met (i.e. the tax not paid) or a reversion becomes operative by virtue of a tax lien.

104.    By definition then, if an owner possesses an absolute estate in his property, there is no portion of the estate available on which to impose a tax lien in rem.

105.    By the terms of the Statutes, the Defendants' authority to assess and levy taxes, is valid only as to a portion of a property owner's estate that is available, and when an estate or interest is unavailable or is removed from availability because of absolute ownership, Defendants lose

capacity to reach that portion of the estate to take for itself, and that portion becomes outside the jurisdiction of the taxing authority to execute a tax lien against a property.

106.    Accordingly, there is no estate remaining on which Defendants can make a tax claim or attach a lien for said claim on the Property because it is held absolutely by Plaintiffs.

107.    Additionally, the exemption under Section 8812(b)(2) should be held to apply universally to all property in the Commonwealth, thus requiring the General Assembly to properly amend the Pennsylvania Constitution to allow the current illegal scheme and exemptions, or to find another method to fund education and other programs that is legal and constitutional.

### Count II
### State Claim
**Defendants must pay just compensation pursuant to the Pennsylvania Supreme Court's Decision in Wallace v Harmstad because the rights asserted are sovereign in nature**

108.    Paragraphs 1-107 are restated and incorporated by reference.

109.    The case of Tyler v Hennepin County gave us a valuable glimpse into the thought processes of municipalities and municipal officials who argued on the record that they were the equivalent of feudal lords or kings with dominion over the land above the citizens.

110.    Wallace v Harmstad declared that all Pennsylvanians own their property as sovereigns in allodial title, not as serfs with feudal title.

111.    The Defendants exert a higher title to property than citizens, as Article II of the General County Assessment Law declares that all persons and property are the "subjects" of the municipal government.

112.    The language of the Statutes uses feudal terms such as "taxable subjects" to be valued to be assessed as though the United States of America was still a monarchy and the municipality is the king:

24

> Section 201.  Subjects of Taxation Enumerated.--The following subjects and property [including persons described in a subsequent section] shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate . . . . General County Assessment Law section 201.

113.    A municipality has no inherent taxing power, sovereign power or inherent right to interfere with property ownership, and no such power emanates from the Pennsylvanian Constitution, nor from the valid laws of the legislature.

114.    Pennsylvanians have been transformed from sovereigns into "subjects" or serfs as the laws of the Commonwealth began to take shape over the years since the founding.

115.    The various exemptions from the tax for municipal governments and other governments are too replete to cite here, and is evidence that the rights of citizens have become subordinate to government.

116.    Exemptions or other relief from tax provided for in the constitution for the elderly and disabled and poor is further evidence of a "neofeudal" system, as this is a recognition that those unable to "work the land" to pay the municipality will be given dispensation, and that property tax administration is inherently feudal in nature.

117.    "Delinquent taxes" pursuant to the business scheme for "property taxes" in the Statutes is the equivalent or substantial equivalent of a ground rent abolished by the Court in Wallace, where Pennsylvanians must now be forced to "work the land" to pay annual rent in the form of "property taxes".

118.    The collection of "delinquent taxes" by means of in rem proceedings to collect on tax claims and enforce tax liens against property pursuant to the Statutes are the equivalent or substantial equivalent of "an action for distress" in the land or similar action to recover a ground rent or possession of the land abolished by Wallace, and is a taking of property that requires at least just

compensation.

119.    The court in <u>Wallace</u> made it clear that its holding applied to government  assertions of sovereign rights against property in the Commonwealth, who must pay just compensation for a taking.

120.    The Statutes do not expressly require the Commonwealth or any local taxing district to assert an expressly granted or reserved ownership interest or any such other express legal or equitable interest in a property located within its jurisdiction in order to assert a tax claim or lien against property, said claims simply arise by virtue of a delegated "taxing authority" that is oppressively asserted by municipalities.

121.    <u>The creation of the interest that the Defendants exert</u>. In the absence of any express ownership interest, a tax claim or lien against property under the Statutes could only be said to arise in law or equity, or "in fact", if at all, via the exercise of the sovereign power of the Commonwealth surreptitiously creating and delegating an implied right of equitable ownership or equitable ownership in fact (operating like a reversion or action for possession in ground rent) in the estates of property of owners inuring to the benefit of Defendants.

122.    This misplaced use of sovereign power operates against the protected ownership rights of Pennsylvanians in their property, reducing their estates from the promised absolute unconditional form protected by the constitution to something akin to a fee simple defeasible or a fee simple subject to condition subsequent that can endure only so long as the "taxes" are paid, lest the estate revert to the Defendants (who will then sell the property to someone else to pay "taxes" who will then hold another lesser title subject to the same condition, ad infinitum).

123.    In accordance with <u>Wallace</u>, the assertion of a purely sovereign interest the land of Pennsylvanians is valid only if the government pays full and just compensation to the property owner

for the taking, otherwise the assertion fails because the government did not *expressly* reserve its interest.

124.    The tax sale of a property under the statutes in order to pay a tax debt pursuant to a tax lien is not legal or constitutional unless the owner receives a payment of full fair market value as compensation for the taking because the right asserted against the property by the government is sovereign in nature.

125.    The municipalities must pay just compensation when instituting a tax foreclosure under the Statutes because the municipality is exercising a sovereign right that is purported to be delegated to it for the purpose of funding state sanctioned programs.

126.    Alternatively, the Statutes should be abolished as feudal rubbish and declared void because there is no valid public purpose in the scheme because the municipalities use the scheme to churn or monetize properties above and beyond the purpose of property taxes or provide investment opportunities, and must raise money for its programs in a legal and constitutional manner, or amend the constitution accordingly.

<u>**Count III**</u>
<u>**State Claim**</u>
**Defendants must be estopped from enforcing the Statutes because the Commonwealth's Actions in passing the Statutes were *Ultra Vires* and a *Breach of Fiduciary duty* to all Pennsylvanians, and therefore, the Statutes are Unconstitutional**

127.    Paragraphs 1-126 are restated and incorporated by reference.

128.    The property tax scheme in Pennsylvania is a power that was not and could not have been expressly reserved by the Commonwealth or any municipality at the time of the founding and therefore neither the state nor its municipalities and/or political subdivisions should be permitted or could have been legally delegated the power to do via implied sovereign powers what it could not do expressly.

129.    Municipalities do not possess sovereign powers and are only creatures of the state.

130.    The Constitution of Pennsylvania does not expressly provide for the taxation of private noncommercial property that is used solely for dwelling purposes, and therefore the taxation scheme is unconstitutional.

131.    As a matter of blackletter law, actions in rem against property do not give "creditors" ownership rights to property, which is what municipalities exert under the Statutes.

132.    In rem actions under the Statutes are illegal assertions of equity ownership rights because municipalities assert a sovereign right, which they do not validly possess, to divest ownership and title from A (the real owner) to B (an entity that can pay the ground rent/tax), in derogation of the rule in <u>Vanhorne's Lessee v. Dorrance</u>, 2 U.S. 304 (1795).

133.    Pursuant to section 5 of the Act of 1779 1 Sm.L. 863 of the General Assembly, the Commonwealth of Pennsylvania (i) vested itself in all the lands previously held by the late Proprietaries (the Honorable Penn family), (ii) took absolute equitable title to all lands in Pennsylvania, (iii) agreed to hold the land in trust "*for the use and benefit of the citizens thereof*", and (iv) cleared the pre-revolutionary land patents of all encumbrances and feudal vestiges, as follows:

> Section 5. Be it therefore enacted, and it is hereby enacted, That all and every the estate, right, title, interest, property, claim and demand of the heirs and devisees, grantees or other, claiming as proprietaries of Pennsylvania, whereof they or either of them stood seised, or to which they or any of them were entitled, or which to them were deemed to belong, on the 4th day of July, in the year of our Lord 1776, of, in or to the soil and land contained within the limits of the said late province, now state of Pennsylvania, or any part thereof, together with the royalties, franchises, lordships and all other the hereditaments and premises comprised, mentioned and granted in the same charter or letters patent of the said King Charles the second (except as herein after is excepted), shall be and they are hereby vested in the commonwealth of Pennsylvania, for the ***use and benefit of the citizens thereof***, freed and discharged, and ***absolutely acquitted***, exempted and indemnified of, from and against all estates, uses, trusts, entails, reversions, remainders, limitations, charges, incumbrances, titles, claims and demands whatsoever, from, by or under the said charter or letters patent,

or otherwise, as fully, clearly and entirely as if the said charter or letters patent, and the estates, interests, hereditaments and premises therein comprised, mentioned and granted, and all other the estate, right and title of the said proprietaries, of, in and to the same premises, were herein transcribed and repealed. [emphasis added]

134.    Pursuant to section 11, Act of 1781 of the General Assembly, the Commonwealth then created a land office and provided that all owners of land who purchase land pursuant to the law also vest in their title absolutely without condition; the same title in which the Commonwealth was vested is now vested in the citizens [as was recognized in Wallace]:

> Section 11. And be it further enacted, That all and every, the land or lands granted in pursuance of this act, shall be free of all reservations and restrictions as to mines, royalties, quit rents or otherwise, so that *the owners thereof, respectively, shall be entitled to hold the same in absolute and unconditional property* . . . . [emphasis added] LAND OFFICE - PUBLIC LANDS - GRANTS AND PATENTS Act of Apr. 9, 1781, 1 Sm.L. No. 929.

135.    Under the aforesaid acts of the General Assembly, there was no reservation of any legal or other equitable ownership interests or claim in the lands by the Commonwealth when land was transferred pursuant to the authority of the newly created land office--- the citizens of Pennsylvania were/are to receive absolute deeds of title from the Commonwealth without any conditions whatsoever.

136.    The aforesaid transfer of absolute unconditional ownership means that there is no interest in the land that can remain in existence between the transfer of title from the Commonwealth to its citizens that is able to be used by the state or any of its political subdivisions to institute property taxes or any other condition other than eminent domain requiring just compensation, as recognized by the court in Wallace.

137.    The obvious reason why the Commonwealth did not reserve for itself any express interest or conditions in the land for its benefit must be acknowledged--because any such reservation in 1781 would have been considered a reservation of a feudal interest in land, which

might have caused an uprising--as we had just fought a war to stop this exact practice by the monarchy, and the Commonwealth did exactly what was expected--by law and contract it gave Pennsylvanians absolute ownership of their land.

138.    Having reserved no express interest, ownership, condition or claim in the land owned by the private citizens of Pennsylvania, the Commonwealth breached its fiduciary duty to hold the land in trust for the benefit of its citizens by instituting a property tax system giving away an equitable interest in the land to local districts that it did not possess, and such localities are exerting this improper property interest creating an improper and illegal conditional interest in the form of tax liens on property that is held absolutely and without any conditions under the law.

139.    The political subdivisions, counties, boroughs, townships, cities, school districts and municipalities, et.al., must immediately be estopped from enforcing the property tax statutes because the Commonwealth could not authorize local political subdivisions to do what it forbade itself by law and contract to do--which is to impose tax liens and encumbrances without reservation in the patents or deeds.

140.    Not having reserved such rights for itself, the Commonwealth cannot then give that which it did not possess to its creatures, the political subdivisions, counties boroughs, townships, cities, school districts and municipalities, et. al. and therefore the Statutes are void and the Defendants must be estopped from enforcing them.

141.    Municipalities, not possessing sovereign powers of their own, and having no valid statutory or constitutional basis upon which to assert their interest under the Statutes, must  be estopped from operating the Statutes.

142.    In addition, The Pennsylvania Constitution does not expressly provide for taxation of private noncommercial property, and without express authority to do such, a municipality cannot

take action.

143.    Plaintiffs are entitled to a reimbursement of $184,000 at minimum for this grievance.

144.    The damage to all Pennsylvanians is severe, as they never knowingly consented to any of the foregoing, and they are entitled to similar reimbursements or other remedies in equity for this grievance for breach of fiduciary trust created by the aforesaid Act of 1779.

145.    The property tax system as it is currently operated under the Statutes should be abolished in accordance with the aforesaid with respect to Plaintiff's Property and all others similarly situated, and Defendants should be required to seek constitutional means to fund their education and other programs.

## Count IV
## State Claim
### The Statutes and Municipal Operation of the Statutes violate
### Article I, Section 1 and Article VIII, Section 8 of the Pennsylvania Constitution

146.    Paragraphs 1-145 are restated and incorporated by reference.

147.    Regardless of the level of estate or title that any Pennsylvania property owner may be said to possess in their property, the statutes operate to defease the estates of property owners and to cause an unlawful hypothecation or pledge/loan of the property of all Pennsylvanians to Defendants in order to pay so called "delinquent tax" debts.

148.    The municipal government and its employees and contractors, under color of the statutes passed by the Commonwealth have, with deliberate indifference to the rights of Pennsylvanians, ignored the law and constitution by exerting complete dominion and ownership-in-fact over the land in the Commonwealth by virtue of an unlawful extension of credit from the Commonwealth (based on the land) in derogation of the legal and contractual promises made by the Commonwealth to convey all land to the people of Pennsylvania absolutely and without condition (i.e. indefeasible rights), as required by the constitution and laws of Pennsylvania.

149.    The Pennsylvania Constitution Section 1 begins:

That the general, great and essential principles of liberty and free government may be recognized and unalterably established, WE DECLARE THAT--

§ 1.  Inherent rights of mankind. All men are born equally free and independent, and have *certain inherent and <u>indefeasible</u> rights, among which are those of enjoying and defending life and liberty, of <u>acquiring, possessing and protecting property</u>* and reputation, and of pursuing their own happiness. [emphasis added]

150.    Section 8 of the Pennsylvania Constitution, Commonwealth Credit Not to Be Pledged, states:

*The credit of the Commonwealth shall not be pledged or loaned to any individual, company, corporation or association* nor shall the Commonwealth become a joint owner or stockholder in any company, corporation or association. [emphasis added].

151.    The Commonwealth of Pennsylvania, having held all land in trust for Pennsylvanians, and having made an absolute grant of land to Pennsylvanians, had no rights in the land to grant to Municipalities, or to extend credit to municipalities to use such estates in land as credit to lien against for tax debts, thus making the statutes void and their operation unconstitutional.

152.    Under color of the statutes, when a "real estate" property record owner is declared by Defendants to have "delinquent taxes" on his property, the owner is arbitrarily and illegally declared a "debtor" through no statutory or legal authority whatsoever, and his property is then slated to be taken pursuant to a tax lien action in rem under the Statutes and used to pay the "debt".

153.    After the property or owner is illegally declared to have fictitious debt under the authority of no law or statute, this then creates the fictitious creditor, and the political subdivisions and Defendants assume this role of creditor to collect on the "delinquent tax" debt by selling properties, taking the money, and reissuing inferior colors of title (tax deeds) to new "owners" who have no valid claim whatsoever, which is a forfeiture of the valid title of the original owner.

154.    This debt and credit sales scheme is accomplished by an extension of credit from the

Commonwealth of Pennsylvania to the Defendants under the Statutes in the form of the hypothecation of all property and then a "tax lien" on a specific property using the aforesaid "implied right" or sovereign right or ownership in fact, or equitable ownership interest in and dominion over the properties of Pennsylvanians.

155.    The Commonwealth extends this aforesaid credit pursuant to the Defendants on an ongoing basis by operation of the Statutes to unconstitutionally deprive Pennsylvanians of their property rights on a continuing business scheme to monetize the properties of the hardworking people of Pennsylvania by selling their properties and putting them back on the tax rolls for the "new owner" to continue to pay the taxes.

156.    Tax deed and tax liens have become big business in the investment world, with investors looking to buy property cheaply, and these schemes operate as an extension of credit from the Commonwealth to Defendants under the Statutes based on property over which it has unlawfully taken dominion and implied ownership in fact.

157.    Plaintiffs are entitled to a reimbursement of $184,000 at minimum for this grievance.

158.    The damage to similarly situated Pennsylvanians is severe, as they were never told they act as a surety in this scheme, and they are entitled as a class to similar reimbursements or other remedies in equity for this grievance for breach of fiduciary duty and unconstitutional actions.

**Count V**
**Federal Claim**
**The Statutes and Municipal Operation of the Statutes violate 5th Amendment rights**
**(through the 14th Amendment) of the U.S. Constitution**
**-Inverse Condemnation Declaratory Judgment Action-**
**(42 U.S.C. Sec. 1983)**

159.    Paragraphs 1-158 are restated and incorporated by reference.

160.    Pennsylvania has, since the time of its statehood, provided for a very high level of property protection for its citizens that has been significantly eroded and forfeited by operation of the Statutes.

161.    In accordance with the Supreme Court of the United States, tax foreclosures or sales under the Statutes which are made to collect amounts of taxes which are a fraction of the fair market value of the property seized or which forfeit vested property rights, operate as a taking of property without just compensation in violation of the 5th Amendment through the 14th Amendment unless a property owner receives an immediate payment or an opportunity for a determination of an amount in just compensation for the full fair market value of his property when the process of a taking begins.

162.    Without such relief, Defendants begin an onerous and sometimes lengthy process under the Statutes to sell a property for less than its fair market value in an attempt to cover just the taxes, add more penalties and fees to the amounts owed, and create mental stress on property owners.

163.    Defendants also have the power under the Statutes to sell a property for a small fraction of its fair market value (but typically enough cover the taxes), which operates as a taking of property without just compensation in violation of the 5th Amendment through the 14th Amendment because Defendants fail to secure the full fair market value of a property as required by the Takings Clause, and cause a forfeiture of vested property rights.

164.    For example, section 602(g) of the Real Estate Tax Sale law, of which the Plaintiffs were notified by Defendant Northampton County, states:

> "IF YOU FAIL TO PAY THIS TAX CLAIM OR FAIL TO TAKE LEGAL ACTION
> TO CHALLENGE THIS TAX CLAIM, YOUR PROPERTY WILL BE SOLD
> WITHOUT YOUR CONSENT AS PAYMENT FOR THESE TAXES. YOUR
> PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET

VALUE. If YOU PAY THIS TAX CLAIM BEFORE JULY 1, 19 , YOUR
PROPERTY WILL NOT BE SOLD . . . .

165.    On August 5, Plaintiffs Melissa M. Gallagher and John F Gallagher received a large 8
1/2 x 11 inch red cardboard paper sign in their front yard for the entire public to see containing the
statement that is excerpted in relevant part in paragraph 161 above, and that NORCO has returned
a claim to the Tax Claim Bureau of Northampton County on the Prooperty, and therefore Plaintiffs
are taking this legal action to challenge their claim.

166.    In accordance with Tyler, and Dorrance, section 602(g) is an improper divestiture or
forfeiture of vested and protected state and federal property rights because it causes a forfeiture of
equity rights and title of an owner in his home without just compensation, and the property owner
is never afforded an opportunity to obtain just compensation, or be involved in its determination.

167.    Section 602(g) violates the Takings Clause on its face and in operation, and must be
voided.

168.    A property owner has a protected property interest in their home consisting of the
entire bundle of rights in title, ownership and possession of property, including the right to acquire,
possess, maintain and dispose of said property, and such interest is not limited to a monetary
amount of "equity" in their home after it is sold.

169.    Physical per se taking:  A full per se taking under the Takings Clause of the 5th
Amendment begins to occur when, as alleged herein, a tax claim is returned in accordance with the
Statutes and the process of enforcing a tax claim or tax lien pursuant to the Statutes begins, with
action to collect certain amounts, by the Defendants, to start the process of collecting on a bill
under threat to sell or the process of beginning to sell the whole private property, or the creation or
attempted creation of a tax claim or tax lien or tax debt against a whole property or the whole title
of a property owner in order to pay a property tax bill.

170.    <u>Partial regulatory taking</u>: The property tax business scheme (described in detail herein) pursuant the Statutes, the process of hypothecating property (in fact) automatically by operation of the Statutes as a set up for in rem proceedings to collect taxes against properties, is a partial regulatory taking of property under the Takings Clause of the 5th Amendment without just compensation because the value of property is diminished by the unconstitutional hypothecation, the fictitious nature of the later arising "tax debts" with no contract, and the forfeiture that occurs later when a property is improperly sold because of the aforesaid hypothecation.

171.    All Defendants are entities that either have eminent domain powers or are otherwise clothed with the power of eminent domain over the Property owned by the Plaintiffs by virtue of their ability delegated under the provisions of state law, i.e.,  the Statutes, to take property for taxes, and these entities have instituted proceedings pursuant to the Statutes or have sent bills and made threats pursuant to the Statutes to take the Property to levy on said claims as described herin.

172.    Although Defendant Portnoff has some appearance of being a "private company", the relationship between them and the other Defendants is sufficiently close because Portnoff is contracted under the Statutes to enforce tax claims and liens, and therefore is acting under color of state law.

173.    A property subject to a tax lien or a process for obtaining a tax lien or any collection effort under the Statutes is a harm or injury to Plaintiffs' protected substantive property rights, and therefore the Property is protected by the Takings Clause.

174.    Defendants are the proximate cause of such harm and injury to Plaintiffs because its proceedings, collection efforts and other attempts to impose tax claims or tax liens on the Property, including by threat in letters sent via the U.S. Mail.

175.    Plaintiffs are entitled to a declaratory judgment regarding a Takings Clause violation

in order to prevent a harm from occurring and do not have to wait until the Property is actually sold to get the relief requested herein or a judgment thereon.

176.   Where a tax claim is returned on a property, and the amount of the tax to be collected is less than the fair market value of the Property, but the whole Property is aliened and claimed for tax sale, the Plaintiffs are entitled to a declaratory judgment for the immediate payment of the full fair market value of the Property less the tax if the Property is taken for a proper public use and do not have to wait until a sale is made or more harm is incurred to bring a case.

177.   Where a tax claim is returned on a property and a property is sold or threatened to be sold for a "small fraction of its fair market value", this violates the Takings Clause and the Defendants must make up the difference between the fair market value of the property and the sale price in just compensation because the Takings Clause requires compensation for the full fair market value of the Property.

178.   Without the relief requested herein, the process is only a means to make more money on the backs of already stressed owners because goal of the Defendants is not to protect the rights of property owners but rather to recoup the tax money and get the property back on the tax rolls.

179.   The money making regulatory scheme under the Statutes is used as an "end around" to avoid just compensation because having to provide just compensation would make the enterprise less profitable.

180.   All Defendants, including Portnoff, would be jointly and severally liable to Plaintiffs for the full fair market value of the Property currently approximately $395,000.00 (less taxes) for a full per se taking or must cease and desist all collection efforts for "delinquent taxes" because their actions are not for a proper public purpose under the Takings Clause of the 5th Amendment to the U.S. Constitution as applied to the states through the 14th Amendment.

181.    Defendants, excepting Portnoff, are jointly and severally liable to Plaintiffs in the amount of $184,000.00, which represents the diminution in value of the house calculated by using an estimated amount of back taxes plus interest that Plaintiffs have wrongly lost because of the unlawful conduct since 2002.

182.    On a class-wide basis for similarly situated property owners, there are currently approximately 568 tax liens outstanding in Northampton County with an average home price in Northampton County of $314,584.00, therefore there is minimum potential liability of approximately 178,000,000.00 ($180,000,000.00 in total home value less roughly 1.3 million in delinquent taxes) in inverse condemnation claims for their actions described herein which are per se violations of the Takings Clause *not including amounts that are delinquent but have yet to be officially aliened*.

183.    With regard to Defendant Portnoff, it is unclear at present how many tax lien and collection actions are currently being enforce by them.

184.    Across Pennsylvania, there are roughly 30,000 tax liens, making for a potentially statewide catastrophic potential liability of 9.4 billion dollars.

185.    This is the price the law requires to be paid for the taxation and taking of sacred property when the system, by the government's own hand, is based on market value, as is the scheme under the Statutes.

### Count VI
### Federal Claim
**The Statutes and Municipal Operation of the Statutes Violate Minimum Due Process standards under the 14th Amendment to the U. S. Constitution (42 U.S.C. Sec. 1983)**

186.    Paragraphs 1-185 are restated and incorporated by reference.

187.    No paragraph in this Complaint shall be construed as averring that a breach by

Defendants of any state property right or procedure, in and of itself, constitutes a violation of federal due process, but rather that any such breach of a property right by a Defendant also violates independent federal minimum due process standards.

188.    The substantive property rights discussed herein are recognized and protected by both federal and state law.

189.    Education is not a fundamental right protected by the United States Constitution, but the right to own property is a fundamental right.

190.    Defendants, acting under color of state law (by operating the Statutes), have deprived the Plaintiffs of their federal constitutional rights causing the harm described herein.

191.    Protection of property rights under the 14th Amendment demands that rights which are implicit in the concept of ordered liberty and deeply rooted in the nation's history and tradition must be protected from government interference, and the right to own and continue in ownership of one's home without legitimate government inference is such a right.

192.    Two important applicable general principles of substantive due process set forth by the Supreme Court of the United States are as follows:

    a)    The purpose or operation of a statute must not be unreasonable and unrelated to
    the    objectives sought to be achieved; and

    b)    "[A] law which purports to be an exercise of the police power must not be
          unreasonable, unduly oppressive or patently beyond the necessities of the case,
          and the means which it employs must have a real and substantial relation to the
          objects sought to be attained.

The Statutes, on their face, and especially in operation, do not meet these standards.

193.    The "extra legislative" business purposes and current-day effects of the Statutes and their operation over the years should shock the judicial conscience, and the harm to the public should be considered to outweigh the current need to fund the programs, such as education, for

which the Statutes were originally passed, which is also buttressed by several facts which the Plaintiffs request judicial notice in their Prayer for Relief.

194.    The right to own property is a fundamental right guaranteed by the United States Constitution, and any state laws or municipal actions that defease those rights in any manner should be subject to a high level of scrutiny, especially where that property is necessary to sustain one's life.

195.    The U.S. Supreme Court in <u>Dorrance</u> stated that "A statute shall never have an equitable construction in order to overthrow or divest an estate. Every statute, derogatory to the rights of property, or that takes away the estate of a citizen, ought to be construed strictly."

196.    The tax and business scheme described herein pursuant to the Statutes should be strictly construed because it is derogatory to protected and sacred rights of ownership.

197.    The property tax scheme in Pennsylvania, as in many states, has become a bloated billion dollar enterprise statewide and an investment scheme for local business investors that generates income and private investment opportunities that do not bear any relationship to a legitimate governmental interest.

198.    The property tax scheme in Pennsylvania no longer represents a reasonable means to fund education or other public interest projects, which would otherwise be legitimate legislative interests.

199.    Defendants are engaged in churning and monetization of properties where they are sold for less than their fair market value so they can be placed back on tax rolls to continue earning income for the municipal corporation and/or be later sold at a large profit by a private individuals or enterprises that exist for this business purpose; these purposes (i) obliterate protected property rights (ii) do not serve a legitimate government purpose in funding public programs, and (iii) do

more public harm than good, and therefore should be considered to be too oppressive, egregious, arbitrary or unreasonable to be allowed to continue.

200.    The failure of Defendants to pay just compensation creates an extremely profitable business enterprise on the back of citizens  where the duties to citizens are not adhered to and rights are trampled.

201.    There are approximately 30,000 tax liens in Pennsylvania statewide, and this is indicative of a failing system that is putting the ever increasing wants of local governments and private investors ahead of the needs of its citizens to be able to afford to live in their homes.

202.    Education and other local government services are important, but they are not more important than an individual's need to have a place to live where they can feel secure and prosper.

203.    In addition, the operation of the Statutes is a substantial, arbitrary and capricious interference with the right to continue to own one's home because a tax "assessment" bears no relationship to one's ability to pay, and inevitably results in individuals being taxed out of their homes, which is what is happening more than ever today because of the events of the economy far out of the control of the homeowner, and also as a result of recent COVID restrictions on the ability to work and earn money to pay the taxes.

204.    Defendant municipalities arbitrarily, capriciously or unreasonably assess and raise taxes based on property value, which is an unrealized, truly unascertainable and irrelevant concept when an individual is simply living in their home, which is not an "asset" or a commercial entity to be valued, taxed and sold by a government agency.

205.    The ongoing unascertainable and arbitrary nature of the tax--never knowing from year to year if "your" taxes will increase or if you lose your ability to earn income--requires that it be disallowed under minimum federal due process standards because you can lose your home or be

forced to sell your home if your situation unavoidably changes, which should not be tolerated.

206. The Statutes operate as a forfeiture of title and possession of property for the inability or failure to pay a tax, which should be disallowed as an arbitrary and capricious penalty against the ability to continue ownership of property, and a forfeiture of the fundamental right to maintain property, not just acquire property.

207. The tax and business schemes described herein pursuant the Statutes violates the minimum standards of the 14th Amendment substantive and procedural due process rights of Pennsylvanians because they automatically without any process whatsoever defease the estate of a property owner by surreptitiously creating and allowing for an implied right of equity ownership and dominion or sovereignty that was prohibited by law and violated the constitutional rights of Pennsylvanians.

208. Additionally, Plaintiffs and others similarly situated, have been tricked and forced by Defendants into accepting fictitious debt as individuals, which is not a debt that is legally created by the Statutes.

209. The operation of the statutes, including Defendants use of writs of scire facias pursuant to the Statutes, and other instruments, in order to levy on an owner's property, violates the minimum requirements of federal substantive and procedural due process because it surreptitiously and with callous disregard deprives the Plaintiffs of title and possession to their property in a process that "bootstraps" an assessment of tax on property, an inanimate object, into becoming the debt of the owner with ongoing threats of losing their property if they don't continue to pay the tax.

210. The Statutes attempt to assess taxes against *only* property, not against owners; however, because property is an intimate object and is incapable of paying money, and because property owners have a right to own their homes without interference, Defendants get around this

barrier by abusing the process of "in rem" procedures against property.

211.    Defendant's actions under the Statutes are a distortion of legitimate historical use of in rem proceedings where traditionally there is a so-called "right *in* property" which exists legally only when properly reserved or contractually made by a party with collateralized debt; but rather under the Statutes is used to enforce a direct right *to* the property to force the payment of uncollateralized debt with property.

212.    The foregoing turns the in rem process on it head in a manner in which if used in the private sector would be extortion and subject to various criminal actions in federal or state court.

213.    The egregiousness of a similar deprivation of vested property rights was discussed by the Supreme Court of the United states in Dorrance, a Pennsylvania case, and no such provision could have survived in Pennsylvania at the founding of this country, and it is time for these practices to stop--it is not only unconstitutional but also should be noted as a form of public sector racketeering for which no private cause of action apparently exists.

214.    Property rights and individual rights are inseparable, therefore actions against property, as though it had no rights, should be considered as actions against the owner, and owner's rights are inseparable from their property.

215.    Defendants avoid the fundamental rights of owners to maintain their homes because inanimate objects can't pay taxes, therefore Defendants create fictitious debt to owners by sending bills and demands for payment in the U.S. Mails contending that property owners are liable for the debt, when they are not legally obligated as individuals by any statute or law to pay the tax.

216.    Defendants and municipal officers relentlessly attempt to collect on those debts, send threatening letters in the U.S. Mail (or post on the property) to the owner telling them that that they will sell their property for any amount if they don't pay their "delinquent taxes", despite that the

taxes are actually not "theirs" at all, and there is never any statutory or other legal or lawful process to establish liability of an owner of property.

217.    Defendants then use the writ of scire facias and other instruments to illegally force a judgment of debt against an owner so they can then illegally execute the tax lien on the property.

218.    Defendants have been engaging in this process pursuant to long standing policies, customs and procedures with complete indifference as to the state or federal constitutional rights of Pennsylvanians to peaceably live in their homes without interference by bureaucrats' constant pursuit of more and more money on the backs of property owners based on threats to take their homes.

219.    Political subdivisions and municipalities have allowed their employees to engage in these unconstitutional processes and procedures without proper training in other methods of bill collection or otherwise looking into whether these policies are legal or constitutional or should be changed.

220.    Even without the trickery of the writ of scire facias or other documents to create fictitious debt, the operation of the statutes as described herein defeases or reduces by operation of law with no legal process whatsoever the state and federal substantive property rights of Pennsylvanians from their original absolute nature, and therefore violates minimum federal substantive and procedural due process rights contained in the 14th Amendment.

221.    The U.S. Constitution protects the inalienable right to own and continue to own without substantial interference one's private home, which is necessary to sustain life, free from the condition of losing it if you can't pay a bill; this should be obvious.

222.    The forfeiture and divestiture of rights in accordance with the aforesaid in rem proceedings against property are violations of federal substantive due process rights because a

property owner's whole title and possession is stripped from him and placed in another person or entity, which is a power that could not have been and was not legitimately granted to Defendants.

223.    The actions of defendants alleged herein are an unreasonable means of funding education and other programs, which should be funded by other appropriate means that are constitutional and not harmful to the well being to the citizens of Pennsylvania and NORCO.

224.    In rem actions against property require a proper judgment of debt in personam, which is never obtained by Defendants.

225.    Our generation had no vote on the passage of the Statutes, which were passed before we were born; we now implore courts of law to remedy this wrong.

226.    Because of the foregoing, the property tax system as it is currently operated under the Statutes should be abolished in accordance with the aforesaid with respect to Plaintiff's Property and all others similarly situated, and Defendants should be required to seek constitutional means to fund their education and other programs.

227.    Defendants should be held liable for these violations because the Statutes are in the nature of enabling statutes for which there is no other state agency involved, and the Defendants do not in any way shape or form appear concerned about the rights of its citizens to be free from being removed by the government and its agents from their homes for not being able to pay a bill.

228.    Plaintiffs are entitled to a reimbursement of $184,000 at minimum for this grievance.

**Count VII**
**Federal Claim**
**The Statutes and Municipal Operation of the Statutes violate the 4th**
**Amendment (combined with other rights through the 14th Amendment)**
**of the U.S. Constitution**
**(42 USC 1983)**

229.    Paragraphs 1-228 are restated and incorporated by reference.

230.    Rights under the 4th Amendment to the U.S. Constitution, combined with other rights

in the Bill of Rights through the 14th Amendment demand that privacy and substantive property rights which are implicit in the concept of ordered liberty and deeply rooted in the nation's history and tradition must be protected from government interference.

231.    At a minimum, this requires that an individual's private home, homestead or castle, the property on which they live and need to sustain their life, and the entire bundle of rights of ownership and possession of said property should be free of forfeiture provisions to collect on property taxes, and ultimately free of property taxation.

232.    The property tax system as it is currently operated under the Statutes should be abolished in accordance with the aforesaid with respect to Plaintiff's Property and all others similarly situated, and Defendants should be required to seek constitutional means to fund their education and other programs.

233.    Plaintiffs are entitled to $184,000 at minimum for this grievance.

**Count VIII**
**Federal Claim**
**The Statutes and Municipal Operation of the Statutes violate the 8th Amendment (through the 14th Amendment) of the U.S. Constitution (42 U.S.C Sec. 1983)**

234.    Paragraphs 1-233 are restated and incorporated by reference.

235.    As alleged herein, the Defendant NORCO is threatening to take the Property and sell it to pay a tax of about $900, which is about .2% of the currently estimated fair market value of the Property ($395,000).

236.    In accordance with the terms of the Statutes NORCO can sell the Property for $900.00 or less if it so desires with no existing apparatus to stop them, or to protect or provide for a duty to the owner to preserve their interest and rights--a provision and practice that is so egregious on its face, that one can only speculate as to why it has survived for so long without intervention.

237.    Defendant Portnoff and its' clients BASD and Bethlehem Township want to take the Property to satisfy bills which total approximately $5,200.00 which is roughly only 1.3% of the fair market value of the Property, and will then attempt to sell the Property at a low price or just enough to cover the tax claim under the Statutory scheme.

238.    Having an entire property confiscated and title divested in the manners described herein is an egregious action that amounts to an excessive fine and punishment in derogation of the 8th Amendment to the U.S. Constitution as applied to the states through the 14th Amendment.

239.    The people of Pennsylvania need relief from these oppressive actions of Defendants and need the intervention of the federal courts to abolish these practices.

240.    The property tax system as it is currently operated under the Statutes should be abolished in accordance with the aforesaid with respect to Plaintiff's Property and all others similarly situated, and Defendants should be required to seek constitutional means to fund their education and other programs.

<u>**Count IX**</u>
<u>**Federal Claim**</u>
**The Statutes and Municipal Operation of the Statutes violate**
**the U.S. Constitution Article I, Section 10, Clause 1**
**(42 U.S.C. Sec. 1983)**

241.    Paragraphs 1-240 are restated and incorporated by reference.

242.    Article I, Section 10, Clause 1 of the U.S. Constitution states in part:

> ***No State shall*** . . . ***make any Thing but gold and silver Coin a Tender in Payment of Debts; [or] pass any*** . . . ***Law impairing the Obligation of Contracts***, or grant any Title of Nobility [emphasis added].

243.    For this claim, Plaintiffs believe that the current legal tender (USD) is or should be considered the equivalent of gold and silver for purposes of this constitutional provision and are NOT claiming that payment of property taxes can only be demanded in gold and silver.

244.    For this claim, Plaintiffs believe that this constitutional provision, although considered arcane by some, has relevant meaning today--that it should be held to ban the practice of selling property to pay property taxes because that is a demand for payment of debt in the form of property rather than legal tender in derogation of the rather obvious reason for its existence in the Constitution--to require demands for payment of debts to be made only in money form, not in the form of property which is sacred.

245.    Although "property taxes" may be paid by a property owner in U.S. currency (USD), the Statutes attempt to create liability only against *property*, not against *owners*; therefore, the only statutory demand being made is the demand that property be used to pay the debt assessed to the property if an owner does not pay.

246.    In addition, tax liens and tax deeds are a form of a security operating in place of currency in derogation of the Constitution, therefore Defendants may not demand payment for "delinquent taxes" in the form of property or in the form of a tax lien or tax deed in violation of Article I, Section 10, Clause 1 of the U.S. Constitution.

247.    Further, the operation of the Statutes in taking property to pay tax debts impairs the existence of the long running assignments of contracts for absolute titles of ownership to current property owners, as required by Pennsylvania law, and is therefore "a law impairing contracts" in violation of Article I, Section 10, Clause 1 of the U.S. Constitution.

248.    The property tax system as it is currently operated under the Statutes should be abolished in accordance with the aforesaid with respect to Plaintiff's Property and all others similarly situated, and Defendants should be required to seek constitutional means to fund their education and other programs.

249.    Plaintiffs are entitled to $184,000 at minimum for this grievance.

**Count X**
**State Claim**
**Tortious Interference with Contract**

250.     Paragraphs 1-249 are restated and incorporated by reference and alleged to meet the requirement of tortious interference of contract.

251.     Defendants are knowingly and willingly interfering with the original law and contract between the Commonwealth of Pennsylvania and the citizens of Pennsylvania, and between the citizens of Pennsylvania to transfer to and from themselves their land absolutely and without condition in the manner as Plaintiffs have alleged herein.

252.     This interference has unlawfully converted Plaintiffs Property from full absolute legal and equitable title to that of mere legal possessory interest with condition and contingency.

253.     Plaintiffs are entitled to $184,000 for this grievance plus triple that amount, $552,000, in punitive damages, for a total of $736,000.

**Count XI**
**Federal RICO Claim**
**18 U.S.C. 1962**

254.     Paragraphs 1-253 are restated and incorporated by reference.

255.     The substantial portions of Claims IV and VIII, and any other paragraph applicable to any necessary element of this count, shall be incorporated herein and alleged to meet the standards of a prohibited activity under section 1962 with respect to only Defendants PORTNOFF, STACY GOBER, ANDREW FREDA and STEVEN J BARRON, JR.

256.     Plaintiffs are entitled to approximately $552,000.00 (triple $184,000.00) for this grievance because said Defendants have been collecting taxes under these extortionary and false pretenses since 2002 when Plaintiffs purchased their property.

## PRAYER FOR RELIEF

**WHEREAS**, the following requests for judicial notice are intended allay the fears

originally expressed by Justice Powell about disturbing state property tax systems in <u>San Antonio</u>

<u>Indep. Sch. Dist. v. Rodriguez</u>, 411 U.S. 1 (1973); and

**WHEREAS**, with respect to the state and federal claims herein, this Honorable Court

should take judicial notice that Article VIII, Section 2(vi) of the Pennsylvania Constitution provides for

a 100% reduction in property taxes for homesteads, that the legislature fails to fund this exclusion, and

said provision is a recognition that the legislature understands relief from property taxes for homesteads

(private dwellings) is right and just but is putting money ahead of the best interests of the citizens of

Pennsylvania; and

**WHEREAS**, with respect to the state and federal claims herein, this Honorable Court

should take judicial notice that (i) the legislature of Pennsylvania has had several bills introduced over

the recent years, including one currently in committee, to shift the costs of funding education and other

programs funded with property taxes to other proper constitutional funding methods, and (ii) that many

legislators personally have recognized the need to abolish the current system but are placing money

ahead of the interests, needs and rights of its citizens; and

**WHEREAS**, with respect to the state and federal claims herein, this Honorable Court

should take judicial notice that the Commonwealth Court of Pennsylvania has this year ruled that the

funding of the Pennsylvania education system with property taxes collected pursuant to the Statutes

deprives citizens of equal protection of the law under the Pennsylvania Constitution because it creates a

"disparity among school districts with high property values and incomes and school districts with low

property values and incomes [that] is not justified by any compelling government interest nor is it

rationally related to any legitimate government objective".  <u>William Penn School District v PennDOT</u>,

No. 587 M.D. 2014 (Decided February 7, 2023); and

  **WHEREFORE,** it should now be declared by this Honorable Court that the property tax funding scheme (already declared unconstitutional by the Commonwealth Court of Pennsylvania) and the Statutes, on their face and in operation, also violate the laws of the Commonwealth of Pennsylvania, the Constitution of Pennsylvania and the Constitution of the United States, as described herein; and

  **WHEREFORE**, in the interest of justice, Plaintiffs request this Honorable Court to Declare or Order the following:

  a) **Order** that, except with respect to costs and fees of Plaintiffs associated with the class action, each party shall be responsible for its own costs and fees, including attorneys fees, in this matter, and that Plaintiffs shall not be required to pay any costs or fees of the Defendants, including attorneys fees, penalties, interest, or any other fees, incurred in the instant case regardless of outcome because of the importance of the issues to the public.

  b) **Order** that any current tax amounts that have been incurred under Defendants' tax bills referenced herein be frozen as of the date this action is filed, lest they become onerous fines in violation of the 8th Amendment to the Constitution of the United States under <u>Tyler v. Hennepin County</u>.

  c) **Order** that counsel for the Lead Plaintiff and all those similarly situated, John F. Gallagher, who is also a member of the proposed class and represents the Property and his wife (Lead Plaintiff Melissa M. Gallagher,) as a matter of filing and handling this putative class action, may collect a fee out of any award by this court to the putative class of 25% of the entire amount, as determined by this court, that is awarded to the class for money damages or just compensation, including the value of any other damages or injunctive award made by this court to be offered or paid to the class in a

common fund in accordance with in any settlement agreement or judgment award in this matter, with a proviso that counsel for the class may also seek up to $2,000,000 in fees and costs not to be deducted from a common fund.

        d)        **Order** that Defendants be jointly and severally liable to Plaintiffs John F. Gallagher and Melissa M. Gallagher for damages for mental stress and anguish for $1,000,000.00 for punitive damages and $1,000,000.00 to compensate, as detailed below, for the actions of Defendants alleged herein, which is a breach of standards of fiduciary and legal responsibility, reasonableness, and fair dealing between persons in the society in which we live and the social contract between governments and citizens.

        e)        <u>Count I</u>:  **Declare** that the exemption under Section 8812(b)(2) applies to lead Plaintiffs because the Property is owned absolutely and/or applies universally to all those in the class because their property is owned absolutely in accordance with the law.  **Order** that lead Plaintiffs are entitled to a reimbursement of $184,000, or such other amount as determined by this court, and exempt from any tax assessment current and future. The class is entitled to similar reimbursements for taxes paid or other remedies in equity for this grievance for breach of fiduciary duty and unconstitutional actions.  **Order** that the 30 day statute of limitations for appealing the ruling of the Revenue Board to the Court of Common Pleas of Northampton Count be tolled as of August 17, 2023 until a final order on Count I is made by this court, and an additional 30 days be added to make an appeal to the state court.

        f)        <u>Count II</u>. **Declare** that Defendants must offer to pay just compensation to lead Plaintiffs and members of the class when instituting a tax collection or foreclosure procedure under the Statutes because the municipality is exercising a sovereign right to take property for public use that is purported to be delegated to it for the purpose of funding state sanctioned programs. Lead Plaintiffs are

entitled to an **order** for an offer of payment of just compensation in the amount of approximately

$390,000.00, and the entire class is entitled to an offer of payment or payment, as the case may be, of

just compensation in the amount of approximately $178,000,000.00, or such other amount as

determined by the this court, to be distributed to each member ratably based on the formula of the fair

market value of their property subject to collection or foreclosure less the reasonable taxes and fees

owed to the municipality.

        g)      Count III. **Declare** that the Statutes are void and enforcement should be estopped.

**Order** that Plaintiffs are entitled to a reimbursement of $184,000, or such other amount as determined

by this court. The class is entitled to similar reimbursements or other remedies in equity for this

grievance for breach of fiduciary duty and unconstitutional actions. The property tax system as it is

currently operated under the Statutes should be abolished, an **injunction** should be issued to stop it, and

Defendants should be required to seek constitutional means to fund their education and other programs

        h)      Count IV.  **Declare** that the Statutes violate Article I, Section 1 and Article VIII,

Section 8 of the Pennsylvania Constitution.  **Order** that Plaintiffs are entitled to a reimbursement of

$184,000, or such other amount as determined by this court. The class is entitled to similar

reimbursements for past taxes paid or other remedies in equity for this grievance for breach of fiduciary

duty and unconstitutional actions. The property tax system as it is currently operated under the Statutes

should be abolished, an injunction should be issued to stop it, and Defendants should be required to

seek constitutional means to fund their education and other programs.

        i)      Count V.  **Declare** that the Statutes, on their face and in operation, violate the

Takings Clause of the 5th Amendment to the Unites States Constitution as applied through the 14th

Amendment, and **order** damages or injunctions as follows:

                (i)  Defendants are jointly and severally liable to lead Plaintiffs for the full fair
                market value of the Property currently approximately $390,000.00 and must offer

said amount to Plaintiffs for a physical taking or must cease and desist all collection efforts for "delinquent taxes" because their actions are not for a proper public purpose under the Takings Clause.

(ii) Defendants, excepting Portnoff, are jointly and severally liable to Plaintiffs in the amount of $184,000.00, which represents the diminution in value of the house calculated by using an estimated amount of back taxes plus interest that Plaintiffs have wrongly lost because of the unlawful regulatory taking via the operation of the Statutes since 2002.

(iii)  Defendants are jointly and severally liable on a class-wide basis for similarly situated property owners, and must make an offer of payment or are liable for payment, as the case may be, of just compensation in the amount of approximately $178,000,000.00 or such other amount as determined by the this court, to be distributed to each member ratably based on the formula of the fair market value of their property subject to collection or foreclosure less the reasonable taxes and fees owed to the municipality.

j)       Count VI.  **Declare** (A) that the right to acquire, maintain and possess one's private home or homestead is a right which is implicit in the concept of ordered liberty and deeply rooted in the nation's history and tradition must be protected from government interference and (B) that the Statutes violate minimum Due Process standards under the 14th Amendment to the U. S. Constitution as alleged herein because:

(i) operation of the Statutes in the current system does not bear any relationship to a legitimate governmental interest or does not serve a compelling state interest because the government interest in funding programs is outweighed and overshadowed by the harm to the public caused by the income and investment scheme as alleged herein; or

(ii) enforcement of the current system results in an oppressive, arbitrary, capricious, unreasonable or irrational use of government power in furtherance of a legitimate state interest because of the harm to the public caused by the income and investment scheme as alleged herein.

(iii) they cause a deprivation or forfeiture of the vested and fundamental right to title and possession of one's property that is necessary to live.

**Order** that enforcement of the Statutes be enjoined with respect to Plaintiff's Property and all others similarly situated. Defendants should be required to seek constitutional means to

fund their education and other programs. **Order** that Plaintiffs are entitled to a reimbursement of $184,000 or such other amount as determined by this court. The class is entitled to similar reimbursements for taxes paid or other remedies in equity for this grievance for breach of fiduciary duty and unconstitutional actions.

        k)      <u>Count VII</u>. **Declare** that the Statutes violate minimum Due Process standards under the 4th amendment (through 14th Amendment) to the U. S. Constitution because an individual's private home, homestead or castle, the property on which they live and need to sustain their life, and the entire bundle of rights of ownership and possession of said property should be free of forfeiture provisions to collect on property taxes, and free of property taxation. **Order** that Plaintiffs are entitled to a reimbursement of $184,000 or such other amount as determined by this court. The class is entitled to similar reimbursements for taxes paid or other remedies in equity for this grievance for breach of fiduciary duty and unconstitutional actions.

        l)      Count VIII. **Declare** that the Statutes and Municipal Operation of the Statutes violate the 8th Amendment (through the 14th Amendment) of the U.S. Constitution because they are excessive fines or punishments for failure to pay a tax.

        m)      <u>Count IX</u>. **Declare** that the Statutes and Municipal Operation of the Statutes violate the Article I, Section 10, Clause 1 of the Constitution of the United States because they are a demand for payment of debt in the form of property rather than legal tender. **Order** that Plaintiffs are entitled to a reimbursement of $184,000 or such other amount as determined by this court. The class is entitled to similar reimbursements for taxes paid or other remedies in equity for this grievance for breach of fiduciary duty and unconstitutional actions.

        n)      <u>Count X</u>. **Declare** that Defendants knowingly and willingly interfered with the original law and contract between the Commonwealth of Pennsylvania and the citizens of

Pennsylvania, and between the citizens of Pennsylvania to transfer to and from themselves their land absolutely and without condition in the manner as Plaintiffs have alleged herein. **Order** that Defendants are jointly and severally liable to Plaintiffs John F. and Melissa M. Gallagher in the amount of $184,000 for this grievance plus triple that amount, $552,000, in punitive damages, for a total of $736,000.

        o)      <u>Count XI</u>. Declare that Defendants actions meet the standards of a prohibited activity under section 1962 of the United States Code with respect to only Defendants PORTNOFF, STACY GOBER, ANDREW FREDA and STEVEN J BARRON, JR. **Order** that Defendants are jointly and severally liable to Plaintiffs John F. and Melissa M. Gallagher in the amount of $552,000.

## <u>DAMAGES AND RELIEF SUMMARY</u>

        a)      <u>Class action/Class wide Just Compensation</u>: $178,000,000.00. Defendants are jointly and severally liable on a class-wide basis for just compensation in the amount of approximately $178,000,000.00 or such other amount as determined by the this court, to be distributed to each class member as set forth above.

        b)      <u>Just Compensation to Plaintiffs John F. Gallagher and Melissa M. Gallagher</u>: Approximately $395,000.00 (less reasonable taxes) offer of just compensation with an opportunity to pay reasonable taxes and fees, not an amount that is many times or significantly more than the amount of tax originally owed, which would be an excessive fine or punishment under the Constitution.

        c)      <u>Class Action Lead Plaintiff Award</u>. Lead Plaintiff requests a special award of $50,000.00 for bringing this action and doing the work which it entails, which is of significant public interest and importance.

        d)      <u>Special Damages</u>: $184,000.00. Defendants, excepting Portnoff, are jointly and severally liable to Plaintiffs John F. Gallagher and Melissa M. Gallagher in the amount of

approximately $184,000.00, which represents both a loss in value and an actual monetary loss in the amount of back taxes plus interest that Plaintiffs have wrongly lost because of the unlawful conduct since the purchase of their home in 2002.

e)    <u>General  Damages for Nonpecuniary Loss</u>: $1,000,000.00.  Based on the alleged grievous conduct of Defendants, they are jointly and severally liable to Plaintiffs for causing mental anguish for threats of taking Plaintiff's home, being told it can be sold without consent for any amount of money, the humiliation of having red flags placed in your yard by trespassing entities, billing and collecting for arbitrary increasing amounts of money not based on ability to pay, having to fight powerful entities with virtually limitless resources to assert one lawful rights, and other alleged actions which cause fear, humiliation, anxiety, or cause harm to members of the public, as set forth in this complaint.

f)    <u>Punitive Damages</u>: $1,000,000.00. Defendants are jointly and severally liable to Plaintiffs for knowingly breaching duties under the law, and operating the statutes for the benefit of private investors or for the purpose of "churning" properties--selling them for less than fair market value so they can be placed back on the property rolls to earn income.

g)    <u>Damages in Tort or under RICO</u>: In lieu of special damages in paragraph (c) above, Plaintiffs John F. Gallagher and Melissa M. Gallagher request damages in tort for $736,000 or under a RICO claim for $556,000.00.

h)    <u>Injunctions</u> where estoppel is appropriate or where a statute or a provision thereof is made void or any action by Defendants under color thereof is determined to be unenforceable, unconstitutional or estopped for any reason alleged herein or as otherwise determined by this court.

i)    Plaintiffs request any other <u>award for money damages</u>, or other judicial remedy as determined by this court, whether compensatory or punitive, at law or in equity, as deemed appropriate

by this court to any Plaintiff herein and against any or all Defendants, as appropriate.

## PENALTY OF PERJURY STATEMENT

We, John F. Gallagher and Melissa M. Gallagher, Plaintiffs, declare under penalty of

perjury that the foregoing is true and correct.

Dated: August 23, 2023                    Respectfully submitted,

                                          s/ John F. Gallagher
                                          s/Melissa M. Gallagher

                                          John F. Gallagher, Attorney for Plaintiffs, ID 91481
                                          4050 Freemansburg Ave.
                                          Easton, PA 18045
                                          484 903-3286
                                          johnfrankgallagher@gmail.com